UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------
In re

BIRCH GROVE LANDSCAPING & NURSERY, INC.          15-11984 B


                                        Debtor          DECISION & ORDER
----------------------------------------------------

          Andreozzi, Bluestein, Weber, Brown,LLP
          Daniel F.  Brown, Esq., of counsel
          9145 Main Street
          Clarence, New York 14031
          Attorneys for the Debtor

          Bond, Schoeneck & King, PLLC
          Stephen A.  Sharkey, Esq., of counsel
          Avant Building - Suite 900
          200 Delaware Avenue
          Buffalo, New York 14202-2107
          Attorneys for the Estate of Gordon E.  Fisher

          Rupp Baase Pfalzgraf Cunningham LLC
          Daniel Sarzynski, Esq., of Counsel
          1600 Liberty Building
          Buffalo, New York 14202-3694
          Attorneys for Bank of Akron


Bucki, Chief U.S.B.J., W.D.N.Y.

          The debtor in possession has moved for authority to use cash collateral for the

purpose of making payment on account of the principal owed to the holder of a second lien.

In the face of opposition from the first lienor, the debtor's motion is denied.

          Gordon Fisher was the prior owner of all of the issued shares of stock of Birch Grove

Landscaping & Nursery, Inc., a corporation engaged in the landscaping and construction

business.  Mr. Fisher is now deceased.  His estate asserts that in 2006, Fischer agreed to

sell his interest in the company to Jason Burford by means of a leveraged buy-out.  In

connection with that sale, Birch Grove and Fisher entered into various agreements,

including a stock redemption agreement, a covenant not to compete and a consulting

agreement.  Birch Grove then gave two promissory notes to Fisher.  The first, in the amount of $1 million, represented consideration for the redemption of stock.  The second, in the amount of $200,000, represented consideration for a non-compete agreement.

In 2012, the Estate of Gordon Fisher accepted a restructuring of the obligations of Birch Grove.  Pursuant to a Settlement Agreement, all of Birch Grove's existing and prior debts to the Estate of Gordon Fisher were settled for the sum of $300,000, which Birch Grove agreed to pay with interest that would begin to accrue at the rate of five percent from May 1, 2017.  Starting on that date, Birch Grove was to commence monthly payments that would amortize the obligation over a period of five years.  Birch Grove also agreed to collateralize the obligation with a security agreement covering substantially all its assets.

At the time that Birch Grove Landscaping & Nursery was renegotiating its obligations to the Estate of Gordon Fisher, M&T Bank held a first security interest in the assets of the corporation.  Then in March of 2013, Birch Grove closed a new credit facility with the Bank of Akron in the approximate amount of $1.2 million.  From these proceeds, Birch Grove discharged its loan with M&T Bank.  Although the Bank of Akron obtained a security interest in the assets of Birch Grove, the Estate of Fisher never executed a subordination agreement.  Consequently, the Estate moved into a first lien position upon the satisfaction of M&T's prior loan.

Birch Grove breached its security agreement with the Estate of Gordon Fisher in April of 2015, when it auctioned various equipment and other personal property without the Estate's consent.  From the proceeds of sale, the auctioneer still held $367,534.50 on September 18, 2015, when Birch Grove Landscaping & Nursery, Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code.  On eight occasions, with the consent of both lienors, this court has authorized the interim use of cash collateral.  In each such instance, both the Bank of Akron and the Estate of Gordon Fisher were granted "replace-ment liens in post-petition assets of the Debtor of the same validity, extent and relative

priority and on the same types and kinds of collateral as [the secured creditors] possessed pre-petition."  To date, however, this court has authorized no disposition of the escrowed proceeds from the pre-petition sale of collateral.

On February 12, 2016, the debtor filed its present motion seeking authorization for the continued use of cash collateral and approving a stipulation between the debtor and the Bank of Akron (but not the Estate of Gordon Fisher) with regard to the use of proceeds held in escrow.  Pursuant to this stipulation, the escrow agent would be allowed to disburse $120,000 to the debtor, $207,534.50 to the Bank of Akron on account of the outstanding principal obligation, and $40,000 to the Bank of Akron for deposit into a "cash collateral account" to be used as a source for future operating expenses of the debtor.  The Estate of Gordon Fisher opposes this motion.  It contends that as the holder of the first lien, the Estate enjoys a prior right to the distribution of proceeds.  In response, the debtor would justify its proposed payment to the Bank of Akron on several grounds, most notably that the other assets of the debtor have sufficient value to adequately protect the interests of the Fisher Estate and that the security interest of the Fisher Estate may be subject to avoidance as a fraudulent conveyance or otherwise.

Discussion

Section 363(a) of the Bankruptcy Code defines "cash collateral" to mean "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . ."  In the present instance, the escrowed funds represent proceeds from the sale of assets in which the debtor and both the Fisher Estate and the Bank of Akron have an interest.  Accordingly, the escrow constitutes "cash collateral" for purposes of section 363.

Subdivision (c) of section 363 regulates the use of cash collateral.  In relevant part, this subdivision provides as follows:

"(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –

    (A) each entity that has an interest in such cash collateral consents; or

    (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

The Fisher Estate has refused to consent to the proposed use of cash collateral to pay the second lien of the Bank of Akron. Without this consent, the debtor must look for authority under section 363c)(2)(B), which contemplates the approval of this court. However, subdivision (c)(2) refers only to the use of cash collateral under subdivision (c)(1), a provision that addresses activity "in the ordinary course of business." Here, the debtor proposes an extraordinary payment of principal. Consequently, this court finds no authority under 11 U.S.C. § 363(c) to approve the stipulation between the debtor and the Bank of Akron.

As between the two secured creditors, the Fisher Estate holds a priority lien position. Although 11 U.S.C. § 363 allows this court to address the debtor's right to access a creditors' collateral, this section gives no authority to redefine the comparative rights of the competing creditors as against each other. Without the consent of the first lienor, the second lienor has no right to receive a priority for distribution of proceeds. The debtor argues that the value of its assets will assure adequate protection of the interests of the Fisher Estate, even notwithstanding any principal payment to the Bank of Akron. Section 363(e) directs that the court must "prohibit or condition" the use of cash collateral "as is necessary to provide adequate protection" for the interest of the secured creditor." In this context, "adequate protection" speaks only to the interest of a creditor in assets of the bankruptcy estate, and provides no justification to overlook the relative rights of creditors.

The debtor suggests that the lien of the Fisher Estate may be avoidable as a fraudulent conveyance under 11 U.S.C. § 548 or under state law made applicable to bankruptcy proceedings by reason of 11 U.S.C. § 544.  Because the debtor has not yet commenced any such avoidance action, however, we cannot assume the avoidability of liens for purposes of the present discussion.  But even if the debtor were to avoid the lien of the Fisher Estate, that avoidance would have no effect on the lien priority of the Bank of Akron.  Section 551 of the Bankruptcy Code provides that "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title . . . is preserved for the benefit of the [bankruptcy] estate . . . ."  Essentially, any lien avoidance would inure to the benefit of unsecured creditors, without any enhancement of the Bank of Akron's secondary interest.  Pursuant to 11 U.S.C. §1107, a debtor in possession "shall perform all the functions and duties . . . of a trustee serving in a case" under Chapter 11.  As such a fiduciary, the debtor must safeguard what would become the superior interest of unsecured creditors.  For this reason, the debtor may not concede a special distribution to the second lienor of funds payable in the first instance to the Fisher Estate.

For the reasons stated herein, this court will deny the debtor's motion to approve a stipulation allowing payment on account of the outstanding principal due on the secured claim of the Bank of Akron.  The parties are invited to continue their negotiations and seek approval of any new stipulation that satisfies the directives of this decision and requirements of the Bankruptcy Code.

So ordered.

Date:  Buffalo, New York                   ___/s/      CARL L.  BUCKI_____
            March 28, 2016                        Carl L.  Bucki, Chief U.S.B.J., W.D.N.Y.